UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NATHAN L. ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:18-cv-03280-JRS-TAB |
| | ) |
| CHRISTOPHER SANFORD, et al. | ) |
| | ) |
| Defendants. | ) |

**Order Denying Plaintiff's Motion for Summary Judgment
and Denying in Part and Granting in Part Defendants' Motion for Summary Judgment**

Plaintiff Nathan Adams, an Indiana prisoner, brings this action pursuant to 42 U.S.C. § 1983 against defendants Christopher Sanford, Jennifer Schurman, and Sarah Napper. Mr. Adams claims that Mr. Sanford, Ms. Schurman, and Ms. Napper retaliated against him for filing complaints under the Prison Rape Elimination Act ("PREA"). Specifically, Mr. Adams contends that Mr. Sanford and Ms. Schurman filed a false conduct report against him, and that Ms. Napper found him guilty of the charges in the conduct report because of his PREA complaint and grievances. Mr. Adams also claims that Mr. Sanford and Ms. Schurman discriminated against him based on his race in investigating his PREA complaint, and that Ms. Napper discriminated against him based on his race in disciplinary proceedings. Mr. Adams seeks summary judgment on his claims and the defendants seek partial summary judgment. For the following reasons, Mr. Adams's motion for summary judgment is denied and the defendants' motion for summary judgment is denied in part and granted in part.

## I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## II. Facts

The following statement of facts has been evaluated pursuant to the standard set forth above. The facts are considered undisputed except to the extent that disputes of fact are noted.

Mr. Adams contends that in the early morning hours of March 25, 2018, he was awakened by a correctional officer lifting his blanket and sexually harassing him. Dkt. 76 ¶ 5. Mr. Adams submitted a PREA grievance regarding this incident. *Id.* ¶ 6. He filed another grievance two days later when he had not yet received a response. *Id.* ¶ 7. Ms. Schurman, who worked as the PREA coordinator at that time, concluded that the claim was unfounded because, when she reviewed the video, she observed no physical contact between Mr. Adams and correctional staff. Dkt. 78-3 ¶ 3, 7, 8. On March 27, 2018, a Sexual Abuse/Harassment Investigation Outcome Offender Notification was completed which marked this incident as unfounded. Dkt. 78-2.[1] Mr. Adams was then summoned to the counselor's office and signed a form with a box checked "unfounded." Dkt. 76 ¶ 8. Mr. Adams believed that his signature meant that he reviewed the form, but he did not agree with the conclusion. *Id.*

Mr. Adams also contends that Mr. Sanford and Ms. Schurman give investigation priority and remedy to white prisoners, while ignoring and delaying remedies to black prisoners. Dkt. 76 ¶ 22. In support of this assertion, Mr. Adams presents an affidavit from an African American inmate who states that his PREA complaint filed against a correctional officer was not investigated. Dkt. 75 p. 67-69. Mr. Adams also presents the affidavit of an African American inmate who states

---

[1] Mr. Adams asks the Court to strike the Sexual Abuse/Harassment Investigation Outcome Offender Notification form, dkt. 78-2, which the defendants have presented as an exhibit in support of their motion for summary judgment. Mr. Adams contends that this document, which contains his signature, was not provided to him in discovery. Instead, Mr. Adams contends that he was given only an unsigned form in discovery. The defendants respond that Mr. Adams does not dispute the authenticity of this document and that he acknowledges that he did sign it. They argue therefore that Mr. Adams is not prejudiced by its late disclosure. Because Mr. Adams was clearly aware that he signed this document, his request to strike it is **denied**. *See Nunnery v. Sun Life Fin. Distributors Inc.*, 570 F. Supp. 2d 989, 993 (N.D. Ill. 2008) (declining to strike evidence produced late when plaintiff admitted he was already aware of it).

that Ms. Schurman closed an investigation of a PREA complaint he filed without speaking to any witnesses and that he has been written up on false conduct reports. *Id.* p. 52-53.

Mr. Adams met with Mr. Sanford and Ms. Schurman on April 23, 2018. Dkt. 76 ¶ 15. During this interview, Mr. Sanford reviewed the March 25, 2018 video. *Id.* ¶ 16. Mr. Sanford then issued a conduct report for use and/or possession of a cellular telephone stating that Mr. Adams could be seen using a cellular device on his bed. Dkt. 75 p. 51. The report of conduct states:

> On 4/23/2018, while reviewing video of K-Dorm D5-2-12, I witnessed offender Adams, Nathan DOC 112090 using a cellular device. Offender Adams is seen using this device in his assigned bed. You are clearly able to see the glow of the screen on camera. This incident took place on 3/25/2018 at approximately 3:30 AM.

*Id.* Mr. Adams contends that the conduct report was false, that he never possessed a cell phone, and that Mr. Sanford and Ms. Schurman told him "[we] have our ways of getting you." Dkt. 76 ¶ 16, 20. The defendants deny telling Mr. Adams this. Dkt. 92-1 p. 17, 28.

On May 1, 2018, Mr. Adams filed grievances asserting that Mr. Sanford's conduct report was false. Dkt. 76 ¶ 26; Dkt. 75 p. 80-81. Mr. Adams testifies that the next day, Mr. Sanford told him, "I pull conduct reports out of nowhere." Dkt. 76 ¶ 27.

On May 4, 2018, Mr. Adams received a Report of Disciplinary Hearing Video Evidence Review in which Ms. Napper stated:

> I Officer S. Napper reviewed the video for this incident. I saw offender Adams 112090 in his bed located at K5-2-12 on camera K5 Dorm QUAD. He was covered up completely with his blanket. Underneath the blanket I could see a couple of times a light flash underneath the blanket. At approximately 2:28 am I could see a brighter light flash underneath his blanket.

Dkt. 75 p. 92.

Mr. Adams points out that there is a conflict between the report of conduct and the video review regarding what time Mr. Adams was allegedly seen with a cell phone. The defendants explain that the time notation of 3:30 on the report of conduct is a typo. *See* dkt. 105-3 p. 11

(admitting that the time in the conduct report at issue and the caption on the video were in conflict and explaining that this discrepancy was the result of a clerical error).[2]

On May 9, 2018, Mr. Adams was found guilty of the April 23, 2018, conduct report. Dkt. 75 at 97. Ms. Napper was the hearing officer. *Id.* Before the disciplinary hearing, Mr. Adams had no contact with Ms. Napper that he could remember. Dkt. 78-1 p. 68, 74.[3] During the hearing Ms. Napper stepped out of the room to make a call. *Id.* p. 73-74. For his defense to the disciplinary charges, Mr. Adams requested video of the March 25, 2018, incident at 3:30 a.m., as well as other evidence and argued that the conduct report and the video review times were in conflict. Dkt. 76 ¶¶ 36, 37. Ms. Napper did not call Mr. Adams's requested witnesses or review his requested evidence. *Id.* ¶ 36. Ms. Napper found Mr. Adams guilty of use and/or possession of a cellular device. *Id.* ¶ 39.

Mr. Adams believes that Mr. Sanford and Ms. Schurman told Ms. Napper to find him guilty. Dkt. 78-1 p. 69. He bases this conclusion on the conduct report. *Id.* Mr. Adams appealed and the guilty finding was vacated. Dkt. 75 p. 99.

Mr. Adams contends that white inmates are provided with more fair disciplinary hearings than African American inmates. He presents the affidavits of three fellow African American inmates who state that they were denied evidence and witnesses in a disciplinary hearing. *Id.* p. 55-56 ("I initially thought all prisoners were being treated like this by Officer Napper until I

---

[2] Mr. Adams insists that the defendants' explanation for the inconsistency between the time on the conduct report and video review is false and therefore states that the defendants have committed discovery abuses by failing to provide him with video of the 3:30 a.m. incident. His motion for sanctions on this matter has been denied because the Court has found that the defendants have provided an adequate explanation for the lack of a video from 3:30 a.m. Dkt. 107. At any rate, any 3:30 a.m. video is not necessary to resolve the motion for summary judgment.

[3] References to Mr. Adams's deposition are to the page of the deposition transcript, not the page of the filing in CM/ECF.

witnessed during the second time she denied me witnesses and evidence she did the same thing to other Black and Hispanic prisoners but not one time did she deny white prisoners their right to witnesses and evidence."), 57-58 (affidavit from an African American inmate who states that his requested witnesses and evidence were denied, but doesn't state who denied the evidence); 64-66 (same); 59-63 (affidavit from an African American inmate attaching a copy of an appeal stating that Ms. Napper denied evidence). He also presents affidavits of three white inmates who state that they were given all the witnesses and evidence they requested at a disciplinary hearing, but these inmates do not identify the hearing officer who provided them the evidence. Dkt. 75 p. 70-78. During his deposition, Mr. Adams was unable to identify a similarly situated individual who was denied evidence at their disciplinary hearing. Dkt. 78-1 p. 79-80.

### III. Discussion

Mr. Adams's claims are that Mr. Sanford, Ms. Schurman, and Ms. Napper retaliated against him for filing his PREA complaint and violated his Fourteenth Amendment equal protection rights by treating black inmates' PREA complaints differently than those filed by white inmates and by providing white inmates their requested evidence during disciplinary hearings but not black inmates. Mr. Adams seeks summary judgment on all of his claims, including an additional due process claim. Ms. Napper seeks summary judgment on Mr. Adams's retaliation claim and all defendants seek summary judgment on the equal protection claims.

A. *Retaliation*

To prevail on his First Amendment retaliation claim, Mr. Adams must show that "(1) []he engaged in activity protected by the First Amendment; (2) []he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity []he engaged in was at least a

6

motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (internal citations omitted).

### 1. Protected Activity

Here, there is no dispute that Mr. Adams has satisfied the first element of his retaliation claim. His PREA report and grievances were protected by the First Amendment. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7rh Cir. 2015) ("filing a non-frivolous grievance is a constitutionally protected activity sufficient to support a retaliation claim").

### 2. Deprivation Likely to Deter First Amendment Activity

The defendants also do not dispute that disciplinary charges are a deprivation that would likely deter First Amendment protected activity.

### 3. Motivating Factor

The parties do dispute whether Mr. Adams's filing of a PREA complaint and grievances was the cause of the alleged retaliatory action. To show that the defendants' actions were retaliatory, Mr. Adams must provide evidence that retaliatory animus was at least a "motivating factor" in their actions. *May v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). This "can . . . be demonstrated by suspicious timing alone only when the . . . action follows on the close heels of protected expressions." *Daza v. Indiana*, 941 F.3d 303, 309 (7th Cir. 2019). Even if Mr. Adams can demonstrate that retaliatory animus was a motivating factor in a defendant's actions, this is not enough to establish retaliation as a matter of law. Instead, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *May*, 719 F.3d at 635. In other words, the defendants can rebut Mr. Adams's prima facie case of retaliation "by showing that [their] conduct was not a necessary condition of the harm – the harm would have occurred anyway." *Greene v. Doruff*, 660 F.3d 975, 980 (7th Cir. 2011). If a defendant can

establish a non-retaliatory motive for the allegedly retaliatory action, Mr. Adams must "produce evidence upon which a rational finder of fact could infer that these explanations were lies." *Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006).

### Defendants Sanford and Schurman

Mr. Adams seeks summary judgment on his retaliation claim against Mr. Sanford and Ms. Schurman[4] alleging that these defendants told him that they were going to "get him" or that they would retaliate against him. Dkt. 76 ¶ 16, 20. But the defendants deny saying this. Dkt. 92-1 p. 17, 28. There is therefore a dispute of fact regarding whether Mr. Sanford and Ms. Schurman were motivated by retaliatory animus against Mr. Adams.

### Ms. Napper

Ms. Napper opposes Mr. Adams's motion for summary judgment on his retaliation claims against her and seeks summary judgment in her favor on these claims. She argues that Mr. Adams has presented no evidence to support his retaliation claim against her.

Here, Mr. Adams filed a PREA grievance and shortly thereafter was issued a conduct report. He then filed a grievance against the officers involved in investigating his PREA grievance and issuing a conduct report against him. He asked to have those officers as witnesses at his disciplinary hearing. Ms. Napper denied this request and found him guilty, a finding which was later overturned. A reasonable jury might find, based on the timing of these actions, that Ms. Napper's actions were motivated by retaliatory animus against Mr. Adams. While Ms. Napper can overcome this by showing that she would have found Mr. Adams guilty anyway, she has failed to do so. Because there is a dispute of fact regarding whether Ms. Napper was motivated by retaliatory

---

[4] The Court notes that Mr. Adams moved for summary judgment on his claims, but also argues that there are issues of fact regarding his claims. *See* dkt. 86 p. 5.

animus, neither she nor Mr. Adams are entitled to summary judgment on his retaliation claims against her.

### B. *Equal Protection*

The parties also seek summary judgment on Mr. Adams's equal protection claims.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting U.S. Const. amend. XIV, § 1); *see also Cochran v. Ill. State Toll Highway Auth.*, 828 F.3d 597, 601 (7th Cir. 2016) ("The Equal protection Clause generally protects people who are treated differently because of membership in a suspect class or who have been denied a fundamental right."). "To state a *prima facie* claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must demonstrate that (1) he is otherwise similarly situated to members of the unprotected class; (2) he was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent." *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000).

Ms. Schurman and Mr. Sanford

In support of his equal protection claim against Ms. Schurman and Mr. Sanford, Mr. Adams states that most PREA complaints are filed by white prisoners and that Mr. Sanford and Ms. Schurman give investigative priority and remedies to white prisoners. Dkt. 75 p. 25 ¶ 2. Mr. Sanford and Ms. Schurman assert they did not deny Mr. Adams equal protection. Dkt. 92-1 p. 19, 30. Mr. Adams presents the affidavits of two African American inmates who state that their PREA grievances were not investigated. Dkt. 75 p. 52-53, 67-69. But Mr. Adams has not identified any individual of another race who was similarly situated and received different treatment with

9

respect to PREA investigations. Mr. Adams thus has failed to present any evidence to support an equal protection claim against Ms. Schurman and Mr. Sanford. *See Greer*, 212 F.3d at 370. They are therefore entitled to summary judgment on his equal protection claims.

<u>Ms. Napper</u>

Mr. Adams alleges that Ms. Napper discriminated against him based on his race by denying him evidence and witnesses at his disciplinary hearing. At his deposition, Mr. Adams testified that there were other African American inmates who were also denied evidence and witnesses, but he could not identify the names of any white inmates who had received requested evidence. Dkt. 78-1 p. 80-81. In support of summary judgment, Mr. Adams presents affidavits from white inmates who state that they received their requested evidence and witnesses. Dkt. 75 p. 70-79. But these affidavits do not identify the hearing officer, the disciplinary charge, or the evidence and witnesses that were requested. Because these affidavits do not identify the hearing officer, they are not evidence regarding how Ms. Napper treated these inmates. Mr. Adams also provides affidavits from three African American inmates who state that they were denied evidence and witnesses. *Id.* p. 55-63, and 64-66. One inmate identifies Ms. Napper as the hearing officer. *Id.* p. 59-63. Mr. Adams also presents an affidavit from an inmate who states, "not one time did [Ms. Napper] deny white prisoners their witnesses and evidence." *Id.* p. 55-56. But these affidavits do not state what evidence was being sought, the basis for the conduct report, or any other information about the disciplinary hearings. Mr. Adams has therefore failed to provide evidence that Ms. Napper treated similarly situated white prisoners differently than she treated him. Ms. Napper is therefore entitled to summary judgment on Mr. Adams's equal protection claim.

C. *Due Process*

Mr. Adams also argues that he is entitled to summary judgment on his due process claims. But there is no due process claim proceeding in this case. As the Court explained in its initial

screening order, Mr. Adams failed to state a due process claim because the disciplinary conviction did not impact the length of his custody. Dkt. 8 p. 4 (citing *Montgomery v. Anderson*, 262 F.3d 641, 644 (7th Cir. 2001)). The Court's order screening Mr. Adams's Amended Complaint directed that the same claims as identified in the initial screening order would proceed. Dkt. 15. To the extent that Mr. Adams can be understood to be attempting to amend his complaint to include a due process claim, he has shown no good cause to amend his complaint at this late stage. *Cf. Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014) (where a plaintiff moves to amend his complaint after the deadline set by the Court, the Court applies the "heightened good-cause standard of Rule 16(b)(4)…."). Accordingly, no due process claims are proceeding in this case and Mr. Adams is not entitled to summary judgment on any such claim.

### IV. Conclusion

For the foregoing reasons, Mr. Adams's motion for summary judgment, dkt. [74], is **denied**. The defendants' motion for summary judgment, dkt. [78], is **granted in part and denied in part**. The defendants' motion is granted as to the equal protection claims against all defendants. The motion is denied as to the retaliation claim against Ms. Napper. Therefore, the equal protection claims against all defendants are **dismissed**. The retaliation claims against all defendants will proceed to settlement or trial if one is necessary. No partial final judgment shall issue as to the claims resolved in this Order.

As discussed above, Mr. Adams has not been prejudiced by the late production of the signed Sexual Abuse, Harassment Investigation Outcome Offender Notification form. Accordingly, his motion for a protective order, dkt. [82], and his motion to strike, dkt. [91], which both ask the Court to strike that document, are **denied**. In addition, Mr. Adams's motion to strike Laura Bodkin's declaration, dkt. [94], which is based on the fact that Ms. Bodkin was not

previously identified as a witness, and his motion objecting to Ms. Bodkin's declaration, dkt. [97], are **denied** because her declaration was not necessary to the resolution of the motions for summary judgment. Finally, Mr. Adams's motions objecting to Mr. Sanford and Ms. Schurman's declarations, dkt. [95], dkt. [96], and dkt. [100], are each **denied** as unnecessary because those focus primarily on the merits of Mr. Adams's claims, not on the admissibility of the evidence presented by Mr. Sanford and Ms. Schurman.

The Court *sua sponte* reconsiders its denial of Mr. Adams's motion for assistance with recruiting counsel. That motion, dkt. [60], is now **granted**. The Court will attempt to recruit counsel to represent Mr. Adams. Mr. Adams will be notified when this step has been taken and the Court will schedule further proceedings in a separate order.

**IT IS SO ORDERED.**

Date: 6/19/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

NATHAN L. ADAMS
112090
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel